IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-02587-PAB-MEH

NOLMIN SEQUEIRA,

      Plaintiff,

v.

DAVID McCLAIN,
KIEL JOHNSON,
JEFFREY GROFF, in his official capacity as EBAT Program Manager for the Colorado
Department of Public Health and Environment, and in his individual capacity,
DAVID BUTCHER, in his official capacity as former Director of the Laboratory Services
Division for the Colorado Department of Public Health and Environment, and in his
individual capacity,
COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT -
LABORATORY SERVICES DIVISION,
CMI, INC., a Kentucky Corporation, and
ALAN C. TRIGGS, Corporate Compliance Officer - Corporate Counsel, CMI, Inc.,

      Defendants.

_____

**ORDER**
_____

The matter is before the Court on CMI, Inc.'s and Alan Triggs' Motion to Dismiss

Amended Complaint with Prejudice [Docket No. 61]; Defendant [sic] McClain and

Johnson's Motion to Dismiss Amended Complaint [Docket No. 63]; and Motion to

Dismiss Amended Complaint by Colorado Department of Public Health and

Environment – Laboratory Services Division, Jeffrey Groff and David Butcher [Docket

No. 70].  The Court has jurisdiction pursuant to 28 U.S.C. 1331.

## I. BACKGROUND[1]

This case arises from the arrest and prosecution of plaintiff for driving under the influence of alcohol ("DUI").  Docket No. 58.  Plaintiff brings claims for constitutional violations pursuant to 42 U.S.C. § 1983.  He alleges that the arresting officers, David McClain and Kiel Johnson ("police officers"), violated his civil rights under federal law by forcing him to perform roadside maneuvers without a coat in below-freezing weather and by arresting him without probable cause.  *Id*. at 2, ¶ 2.  He also brings a claim against the Colorado Department of Public Health and Environment - Laboratory Services Division ("CDPHE") and two of its employees, Jeffery Groff and David Butcher (collectively, "state defendants"), for withholding evidence related to their allegedly false certification that the Intoxilyzer 9000 machine used to test plaintiff's blood alcohol level was properly calibrated and tested.  *Id*. at 30-31, ¶ 78-83.  Finally, plaintiff alleges a conspiracy among the state defendants, CMI, Inc. (the company that makes the Intoxilyzer 9000) and its former general counsel, Alan C. Triggs (together, "CMI defendants"), to improperly withhold exculpatory evidence related to the testing and operation of the Intoxilyzer 9000.  *Id*. at 2, ¶ 3.

In the early morning of November 24, 2013, Officer McClain stopped the car plaintiff was driving in Louisville, Colorado for a defective headlight.  Docket No. 58 at 6, ¶ 17.  At the scene of the stop, it was 24 degrees with a windchill of 19.1 degrees.  *Id*., ¶ 19.  A video camera in the patrol car recorded the stop.  *Id*., ¶ 18; *see also* Docket

---

[1] The following facts are, unless otherwise noted, taken from the amended complaint [Docket No. 58] and assumed to be true for the purposes of resolving this motion.  *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

No. 43, Ex. A ("Arrest Video").[2]

When Officer McClain activated his overhead lights, plaintiff turned on his right turn signal, but took more than a minute to pull over.  Docket No. 58 at 6, ¶ 18; Arrest Video at 3:38:05-3:49:20.  Before pulling over, plaintiff passed roads on which he could have made a right turn and passed several safe locations to pull over.  Arrest Video at 3:38:05-3:49:20.  Plaintiff eventually did make a right turn and pulled over to the curb. *Id*.  The video does not show any evidence of bad driving on plaintiff's part.

After plaintiff pulled his vehicle over, Officer McClain got out of his patrol car and walked up to plaintiff's car.  While standing next to the driver's window, Officer McClain asked for plaintiff's license and registration and asked plaintiff questions about where he was going to and coming from.  Arrest Video at 3:50.  He then radioed for backup to perform "roadsides."  *Id*. at 3:52.  Officer Johnson responded to the scene.  *Id*.  Upon walking back to plaintiff's vehicle, Officer McClain asked plaintiff, "Do you want to jump out and talk to me?"  *Id*., at 3:54.  Plaintiff immediately got out of the car.  *Id*.  Officer McClain then asked plaintiff to move to the sidewalk in order not to get run over.  *Id*.  Officer McClain asked plaintiff if he had been drinking.  *Id*. at 3:55.  Plaintiff said no.

---

[2] Because plaintiff's amended complaint makes specific reference to the video of plaintiff's arrest, the Court can consider it without converting the motion to dismiss into a motion for summary judgment.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").  The police officers refer to the video in their motion and, without objection, plaintiff refers to it in his response.  Docket Nos. 63, 78.  The video begins shortly before plaintiff's car passes in front of the patrol car at 3:48 a.m. and ends after plaintiff has been arrested at 4:13 a.m.

*Id*.[3]  Plaintiff also said that his passenger had not been drinking. *Id*. Officer McClain

stated, "I'm smelling it off somebody." *Id*. Officer McClain asked plaintiff if he "would do

voluntary roadsides to tell if he was good to drive." *Id*. Plaintiff said, "of course." *Id*.

Officer McClain explained to plaintiff that he was going to perform a horizontal gaze

nystagmus ("HGN") test. *Id*. at 3:56. He asked plaintiff to keep his head still and

straight while doing the test. *Id*. Plaintiff said that he was cold, and Officer McClain

asked if he had a coat. *Id*. Plaintiff said that he did not. *Id*. Plaintiff complained that

he was "freezing" and shivering. *Id*. at 3:57. After finishing the HGN test, Officer

McClain had plaintiff perform a walk-and-turn test. *Id*. Plaintiff said that he was very

cold and that he was shaking. *Id*. at 3:59. Officer McClain told him he would "take that

into consideration." *Id*. Officer McClain then had plaintiff stand on one leg and count.

*Id*. at 4:00. Plaintiff stated, "look how bad I'm shaking." *Id*.

Officer McClain then asked plaintiff if he would take a "voluntary" portable

breathalyzer test ("PBT"). Arrest Video at 4:01. Plaintiff asked if taking the test was

voluntary and what would happen if he refused. *Id*. at 4:02. Officer McClain told

plaintiff that it did not matter to him whether plaintiff took the test. He said, "whatever

you want to do." *Id*. at 4:02:19. Plaintiff expressed concerns about the consequences

of not taking the PBT, but agreed to take it. *Id*. at 4:02:53. Officer McClain said he

needed some time for his PBT to warm up. *Id*. at 4:03. Officer McClain then said his

PBT was "cold, like you, and it's not going to work." *Id*. Officer Johnson performed the

test with his PBT. *Id*. at 4:04. Officer McClain then arrested plaintiff for DUI. *Id*. at

---

[3] Plaintiff's words can be heard clearly during most of the video and, while he has
an accent, there are no indications that his speech is slurred.

4:04:40.  At this point, plaintiff had been outside his car for just over ten minutes.

After arresting plaintiff, Officer McClain put him in the back of his patrol car with the door open.  Docket No. 58 at 12, ¶ 31.  Officer McClain and plaintiff then had an extended discussion about whether plaintiff would consent to an official blood or breath test or whether plaintiff refused to take either.  Arrest Video at 4:05-10.  Plaintiff continued to complain that he was "cold," *id*. at 4:09, and "freezing," *id*. at 4:10, and Officer McClain said, "I will turn the heat on for you" and indicated that he had done so. *Id*. at 4:10:41.  This was approximately sixteen minutes after plaintiff exited his car.  *Id*. After further discussion, plaintiff agreed to take a breath test.  *Id*. at 4:13:18.

Plaintiff was taken to the Louisville Police Department and instructed to blow into an Intoxilyzer 9000 device.  Docket No. 58 at 13, ¶ 32.  The Intoxilyzer 9000, unlike the Intoxilyzer model previously used in Colorado, does not capture a sample of the breath to allow independent confirmation of its results.  *Id*. at 15-16, ¶ 36.  Instead, it provides only a histogram result.  *Id*. at 13, ¶ 32.  Plaintiff blew into the device twice, and Officer McClain recorded the result of one of those tests as 0.077.  *Id*.  Plaintiff alleges that he had not been drinking and that the device's result was erroneous.  *Id*.

By regulation, breathalyzer devices in Colorado must be tested and certified by the CDPHE in order to have their results be admissible in DUI prosecutions.  5 Colo. Code Regs. § 1005-2:1 et seq.  Plaintiff alleges that Mr. Groff caused Mr. Butcher to issue certificates falsely certifying that the Intoxilyzer 9000 he used had been properly tested and complied with Colorado's requirements.  Docket No. 58 at 16, ¶ 37.  Plaintiff also alleges that Mr. Groff destroyed all the documents related to the "testing, accuracy

and reliability" of such devices so that such documents would not be discoverable by criminal defendants through the Colorado Open Records Act ("CORA").  *Id*. at 17-18, ¶ 40.

Plaintiff was charged with DUI in the County Court, Boulder County, Colorado ("Boulder County Court").  *People v. Sequeria*, No. 9:13T3851.  During the criminal proceedings, plaintiff sought material about the design, operation, and validation of the Intoxilyzer 9000.  Docket No. 58 at 21, ¶ 47.  Defendants acknowledged the existence of such materials, but "conspired to prevent the documents from being disclosed to defense counsel" by having "the district attorney file a motion to quash Plaintiff's requests, asserting that the materials explaining the methods of operation and design of the Intoxilyzer 9000 were protected by CMI, Inc.'s copyright."  *Id*.  Plaintiff alleges that this claim was "legally fictitious" because the proposed use would have been subject to the "fair use" exception to copyright infringement.  *Id*. at 21-22, ¶ 48.

On April 21, 2014, the Boulder County Court held a motions hearing ("suppression hearing").  Docket No. 58 at 22, ¶ 50.  The court found that Officer McClain lacked probable cause that plaintiff had been driving under the influence before he exited his vehicle and that plaintiff was ordered out of the vehicle by Officer McClain, i.e., that the roadside tests were involuntary.  Docket No. 58 at 22-23, ¶ 50.  On April 30, 2014, the court issued an order suppressing the search and any evidence obtained thereafter.  *Id*. (citing Order Regarding the Defendant's Motion to Suppress the Results of Government Action in Violation of the Fourth Amendment to the Constitution of the United States, slip op. at 2 (April 30, 2014)).  The charges against plaintiff were then dismissed and the court did not rule on plaintiff's requests for

6

information about the Intoxilyzer 9000.  *Id*.

On November 24, 2015, plaintiff filed his complaint.  Docket No. 1.  He filed an amended complaint on May 4, 2016.  Docket No. 58.  On May 18, 2016, the CMI defendants and the police officers filed their motions to dismiss.  Docket No. 61, 63. On May 25, 2016, the state defendants filed their motion to dismiss.  Docket No. 70.

## II.  STANDARD OF REVIEW

Defendants request that the Court dismiss plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Docket Nos. 61, 63, 70.

Under Rule 12(b)(1), defendants CDPHE, Groff, and Butcher ("State Defendants") challenge the Court's jurisdiction to hear plaintiff's fifth and sixth claims for relief based on a lack of standing, claiming that plaintiff cannot show he was injured because he was not convicted.  Docket No. 70 at 5-6.  The federal courts are courts of limited jurisdiction that only have subject matter jurisdiction over live cases and controversies.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  A court resolves such issues under Rule 12(b)(1).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if a court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter

jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F .3d 1001, 1013 (10th Cir. 2003)). Here, state defendants bring a facial attack because they do not seek to introduce any evidence to show the Court lacks jurisdiction.  When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

All defendants challenge plaintiff's claims for failure to state a claim under Rule 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah St. Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215. At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

8

*v. Iqbal*, 556 U.S. 662, 678 (2009).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  Nonetheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

The police officers and state defendants invoke the doctrine of qualified immunity with respect to the claims against them.  Docket No. 63 at 6-7; Docket No. 70 at 13-14. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity provides immunity from trial and the other burdens of litigation such as discovery, rather than merely a defense to liability.  *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223.  Therefore, a court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran,* 242

F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects

public officials "from the costs associated with defending against lawsuits, particularly

baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an]

always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El*

*v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

Under the doctrine of qualified immunity, "government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800,

818 (1982).  Upon a public official's assertion of a qualified immunity defense, plaintiff

bears a "heavy burden" under a two-pronged analysis.  *Buck v. City of Albuquerque,*

549 F.3d 1269, 1277 (10th Cir. 2008).  Under the first prong of the analysis, the plaintiff

is required to "establish that the defendant's actions violated a constitutional or statutory

right."  *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel.*

*Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)).  The determination of

whether a violation occurred under the first prong of the qualified immunity analysis

turns on substantive law regarding that right.  *See, e.g., Casey v. City of Fed. Heights,*

509 F.3d 1278, 1282-83 (10th Cir. 2007).  Under the second prong, the plaintiff must

show that the right at issue was "clearly established" at the time of the defendant's

alleged misconduct.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

## III.  ANALYSIS

### A.  Plaintiff's Claims Against the Police Officers

#### 1.  Fourth Amendment Search and Seizure

The Court first addresses plaintiff's first claim and seventh claim under the Fourth Amendment.[4]  Plaintiff's first claim is that he was seized without probable cause when he was arrested.  Docket No. 58 at 26, ¶ 56.  Plaintiff's seventh claim is that he was searched without probable cause when he was forced to perform roadsides.  *Id*. at 35-36, ¶ 97.  The Court addresses the claims chronologically, analyzing the roadside tests first.

#### a.  Roadside Tests

Plaintiff argues that probable cause is required to order a person out of his car to complete roadsides under *People v. Carlson*, 677 P.2d 310, 317 (Colo. 1984), and that the Boulder County Court, after reviewing the evidence and hearing Officer McClain's testimony, found that plaintiff was ordered out of his vehicle to perform roadsides without probable cause.  Docket No. 78 at 5, 12.

--------

[4] The Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment.  *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). For ease of reference, the Court refers herein only to the Fourth Amendment.  The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  Searches are subject to Fourth Amendment protection "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through means intentionally applied.  *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).

The police officers argue that plaintiff consented to the roadsides[5] and that the threshold for probable cause is low because they only need probable cause that he was impaired "to the slightest degree" to have probable cause that he had committed Driving While Ability Impaired ("DWAI") in order to require roadsides.  Docket No. 63 at 12 (quoting Colo. Rev. Stat. § 42-4-1301(1)(g)).

Violations of state law "'cannot give rise to a claim under Section 1983.'"  *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) (quoting *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003)).  "'Section 1983 does not . . . provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law.'"  *Id.* (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)).  Thus, federal courts are not "bound by a state court's interpretation of federal law-in this case the Fourth Amendment."  *Id.*  In *Wilder*, the court reversed a district court's determination that a police officer was not entitled to qualified immunity due to a lack of probable cause to arrest the plaintiff for DUI.  *Id.* at 815.  The district court had applied the Colorado Supreme Court's *Carlson* decision, which requires probable cause to believe that a driver is under the influence of alcohol before an officer can ask the driver to submit to roadside tests.  *Id.* at 812 (citing *Carlson*, 677 P.2d 310).  By contrast, under federal law, a "field sobriety test is a minor intrusion on a driver only requiring reasonable suspicion of intoxication."  *Id.* at 815 (citing *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006)).  The court found that the

---

[5] The Court agrees with the police officers that the determinations of the Boulder County Court in plaintiff's criminal proceeding are not binding on the parties in this case because "there is no privity between the parties."  *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (citations omitted).

officer's observations of a "moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements" were sufficient to conclude under a totality of the circumstances analysis that "the officer had an objectively reasonable and articulable suspicion of criminal activity." *Wilder*, 490 F.3d at 815. Probable cause to arrest developed when the suspect twice refused to participate in field sobriety tests. *Id*.

Plaintiff alleges that the officers violated his constitutional rights when they ordered him to perform roadsides without probable cause. Docket No. 58 at 35-36, ¶ 97. Because probable cause is not required for an officer to request that a driver perform field sobriety tests under the Fourth Amendment, plaintiff's seventh claim does not state a cognizable claim under federal law. *Wilder*, 490 F.3d at 815 (citing *Miller*, 458 F.3d at 1260). Instead, field sobriety tests only require reasonable suspicion. *Id*. (citing *Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C.Cir.1998), for the proposition that "only reasonable suspicion is required to conduct a field sobriety test because it is such a minimal intrusion on the driver"); *see also United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)) ("Reasonable suspicion requires less than the quantum of proof constituting probable cause."). Accordingly, the Court will dismiss plaintiff's seventh claim. *See* Fed. R. Civ. P. 12(b)(6).

### b. Arrest for Driving Under the Influence

The police officers argue that they had probable cause to arrest plaintiff based on the time it took him to pull over and other signs of intoxication listed on a one-page

investigation notes form filled out by Officer McClain after plaintiff's arrest.  Docket No. 63 at 8-9; Docket No. 43, Ex. B ("Louisville Police Department DUI Investigation Notes").

Plaintiff objects to the police officers' reliance on the investigation notes and points out that he has specifically alleged that Officer McClain falsified his notes. Docket No. 78 at 6 n.2 (citing Docket No. 58 at 26, ¶ 58).

In order to lawfully arrest a person, the police must have probable cause to believe that a crime has been committed.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  "To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting  *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).  Probable cause exists where, under the totality of the circumstances, the officer had "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized."  *Id*. (citations and internal quotation marks omitted).  Where, as here, the plaintiff alleges that the officer falsified information "the existence of probable cause is determined by setting aside the false information" and determining whether probable cause existed based on the remaining information.  *See Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (citations omitted).  Additionally, exculpatory evidence and circumstances must be taken into account in evaluating probable cause. *Id.; Wilder*, 490 F.3d at 814.  In the context of a qualified immunity defense, the

question is whether there was "arguable probable cause" for the challenged conduct. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (citing *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).  "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id*. (citation omitted).

Plaintiff alleges that the signs of intoxication reported by Officer McClain were falsified, Docket No. 58 at 12, ¶ 30, and the Court will, therefore, not consider them. *See Pierce*, 359 F.3d at 1293.  In evaluating the totality of the circumstances, the Court is left to balance the time it took plaintiff to pull over and the smell of alcohol inside the car (with a passenger) against the lack of evidence of impaired driving.  Failure to stop a vehicle promptly and the smell of alcohol are common signs of intoxication that can form part of an objectively reasonable basis for a police officer to believe a plaintiff was intoxicated.  *Schmerber v. California*, 384 U.S. 757, 769 (1966); *United States v. Nunez*, 2011 WL 2357832, at *5 (D. Utah June 9, 2011) ("The Tenth Circuit Court of Appeals has repeatedly held that a driver's failure to stop his vehicle promptly is a factor that can contribute to reasonable suspicion of criminal activity.") (collecting cases).  But the instances where courts have found probable cause to arrest (as opposed to reasonable suspicion to conduct roadsides) based on these signs have involved more inculpatory signs.  *See, e.g.*, *Schmerber*, 384 U.S. at 769 (finding probable cause to arrest suspect where he was in car accident and other "symptoms of drunkenness" were observed); *Wilder*, 490 F.3d at 815 (finding a "moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand

15

movements" were sufficient for reasonable suspicion then elevated to probable cause on refusal to perform roadsides); *Summers v. Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991) (finding "plaintiff's [poor] operation of his vehicle, the officer's scent of alcohol emanating from the vehicle and plaintiff's refusal to take a field sobriety test" constituted probable cause); *Nunez*, 2011 WL 2357832, at *5 (finding probable cause where the suspect was observed moving things around the vehicle while slowing down, gave "[b]izarre travel plans," was nervous for a prolonged period, and was driving someone else's car). Even when plaintiff's delay in pulling over is combined with the odor of alcohol in the car after plaintiff said his passenger had not been drinking, such signs do not provide arguable probable cause to arrest plaintiff for DUI.[6] Without more, and in light of the lack of bad driving, these signs do not form an objectively reasonable basis to believe the plaintiff had committed DUI and, thus, the officers are not entitled to qualified immunity. The Court will therefore deny the police officers' motion with respect to plaintiff's first claim.

## 2. Fourth Amendment Excessive Force

Plaintiff's second claim, that the police officers used excessive force in violation of the Fourth Amendment, is premised on the police officers exposing plaintiff to below-freezing temperatures while plaintiff performed roadside tests. Docket No. 58 at 27, ¶ 63. The alleged "force" in this claim is not anything done by the police officers, but rather the cold itself. *Id*. at 28, ¶ 64.

---

[6] The police officers claim that plaintiff was arrested for DWAI, which requires less probable cause, Docket No. 63 at 12, but there is nothing in the record that supports their claim that plaintiff was arrested for DWAI, rather than DUI as plaintiff alleges. Docket No. 58 at 23, ¶ 50.

In arguing that a constitutional prohibition on such conduct is "clearly established," plaintiff relies on the Sixth Circuit's decision in *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002).  The suspect in *Burchett* was detained in a police car with the windows rolled up for three hours in ninety-degree heat despite his requests that the windows be rolled down.  *Id*. at 940.  The court held that "unnecessary detention in extreme temperatures, like those that could be reached in an unventilated car in ninety-degree heat, violates the Fourth Amendment's prohibitions on unreasonable searches and seizures."  *Id*. at 945.  It based this conclusion on the Supreme Court's statement that "under certain circumstances 'unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks' can violate the Eighth Amendment's prohibition on 'unnecessary and wanton infliction of pain.'"  *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)).  The court reasoned that such actions necessarily violate the Fourth Amendment under the lower "objective reasonableness" test if they would be found to violate the Eight Amendment, which requires a showing of an improper subjective motivation.  *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 398 (1989)).  The Sixth Circuit found that the defendant police officers' "interest in effecting the seizure . . . did not justify the imposition of extreme heat on the individual."  *Id*.  Rather, "their denial of his request that they roll down the windows to allow him air indicate[d] a wanton indifference to this important safety factor."  *Id*.  The court concluded, pursuant to *Hope*, that "this right was clearly established for qualified immunity purposes."  *Id*.

The police officers here argue that *Hope* is distinguishable because it is based

on the Eighth Amendment, not the Fourth Amendment, and *Burchett,* rather than

reflecting a consensus view, is inconsistent with the Seventh Circuit's decision in *Sow v.*

*Fortville Police Dep't*, 636 F.3d 293 (7th Cir. 2011).  Docket No. 83 at 7-8.[7]

     "'Ordinarily,' . . . 'there must be a Supreme Court or Tenth Circuit decision on

point, or the clearly established weight of authority from other courts must have found

the law to be as the plaintiff maintains.'" *Casey v. City of Fed. Heights*, 509 F.3d 1278,

1284 (10th Cir. 2007) (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498

(10th Cir. 1992)).  But the inquiry is performed on a "sliding scale" such that the "'more

obviously egregious the conduct in light of prevailing constitutional principles, the less

specificity is required from prior case law to clearly establish the violation.'"  *Id*. (quoting

*Pierce*, 359 F.3d at 1298).  "[T]he 'reasonableness' inquiry in an excessive force case is

an objective one: the question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them, without regard to

their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (U.S.

1989).  "[E]xcessive force jurisprudence requires an all-things-considered inquiry with

---

[7] The cases are not inconsistent.  In *Sow*, the court rejected the plaintiff's excessive force claim because he had

> cited no case law to provide support for his argument that he was subjected to excessive force merely because he was outside during the investigation.  In fact, Plaintiff has failed to present evidence that Fuller forced Plaintiff to remain outside in the cold.  Plaintiff's bare assertion that he was outside in the cold during the investigation does not support a claim of excessive force.

*Sow*, 636 F.3d at 303.  That is, the Seventh Circuit dismissed Sow's excessive force claim based on a lack of evidence and authority, not on any disagreement with the Sixth Circuit about whether exposure to extreme temperatures can form the basis for a Fourth Amendment violation.  *Sow*, 636 F.3d at 303.

'careful attention to the facts and circumstances of each particular case.'" *Casey*, 509

F.3d at 1284 (10th Cir. 2007) (quoting *Graham*, 490 U.S. at 396).

Plaintiff's claim here fails because the officers' conduct is not egregious when

balanced against the similarity of the case he relies on and other cases addressing

exposure to extreme temperatures.  The suspect in *Burchett* and the prisoner in *Hope*

were exposed to extreme heat for several hours.  *Burchett*, 310 F.3d at 940; *Hope*, 536

U.S. at 734-35.  While the below-freezing temperatures plaintiff was exposed to were

also very uncomfortable, he was exposed to them for a much shorter period of time.

*Cf. Brosh v. Duke*, 616 F. App'x 883, 888 (10th Cir. 2015) (unpublished) (upholding

summary judgment against inmates on an Eighth Amendment excessive force claim

because "subjecting a typically-clothed inmate to a temperature of 39 degrees for

approximately 20 minutes simply does not constitute the malicious and sadistic

application of force.").  Moreover, the defendants in *Burchett* and *Hope* exposed the

plaintiffs to extreme temperatures without any apparent motivation other than

punishment.  In *Burchett,* the suspect was secured in the police car even though the

police "had many equally effective alternative ways of detaining Burchett that would not

have subjected him to excessive heat."  *Burchett*, 310 F.3d at 945.  Instead, the police

put Burchett in the vehicle and denied his request to roll down the windows, showing

"wanton indifference to this important safety factor."  *Id.*; *id*. at 940 (officer told him,

"[n]o, shut your mouth.'').  In *Hope,* the subdued prisoner was handcuffed to a hitching

post.  *Hope*, 536 U.S. at 737 (finding use of the hitching post was punitive and not due

to security concerns).  By contrast, the police officers here were taking investigative

steps that were necessarily performed outside of a vehicle.  Finally, while plaintiff was

out in the cold for more than fifteen minutes, there is no indication in the Arrest Video

that Officer McClain was trying to delay the roadsides to prolong plaintiff's exposure.

*See, e.g.*, Arrest Video at 3:57:13 ("We'll get through this as quick [sic] as we can.").

This contrasts with the defendants in *Burchett* and *Hope* who, without a legitimate

need, exposed the plaintiffs to extreme conditions for an extended period.  *See also*

*Brosh*, 616 F. App'x at 888 (citing *Sow*, 636 F.3d at 303).  Given the differences

between the police officers' actions here and those in *Burchett* and *Hope*, those cases

would not put the police officers "on fair notice that the described conduct was

unconstitutional."  *Pierce*, 359 F.3d at 1298 (discussing *Hope*, 536 U.S. 730).  The

Court will therefore grant the police officers' motion to dismiss plaintiff's second claim

based on qualified immunity.

### 3.   Fourteenth Amendment Substantive Due Process

Plaintiff's third claim, for violations of substantive due process under the

Fourteenth Amendment through outrageous conduct, is also premised on plaintiff's

exposure to the cold.  Docket No. 58 at 28-29, ¶¶ 69-71.  Plaintiff alleges that,

"[c]ompounding the outrageousness of [the exposure to cold, the police officers] then

openly laughed and snickered about the pain and suffering they were subjecting

Plaintiff to, while continuing to subject him to more of it."  *Id*. at 29, ¶ 72.  Plaintiff argues

the police officers violated his right to be free from "arbitrary action" that "shocks the

conscience" and is "intended to injure in some way unjustifiable by any government

interest."  Docket No. 78 at 14 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846,

849 (1998) ("*Lewis*")).

The Tenth Circuit has recognized that "'only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.'" *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1100 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 836)). "*Lewis* requires the plaintiff to assert that the officers acted with an intent to either physically harm the suspect or worsen his legal plight." *Id*. at 1103 (citing *Lewis*, 523 U.S. at 854).

There is no evidence in the Arrest Video that the police officers acted with a malicious intent to physically harm plaintiff or used the cold to worsen his legal plight. When viewed in the light most favorable to plaintiff, the police officers are at most somewhat unsympathetic about plaintiff not having a coat, but "nothing in the record indicates that the defendants were motivated by malice or other improper motive." *Id*.; *see also Lewis*, 523 U.S. at 835.  In particular, there is no allegation that, other than plaintiff's discomfort, any "serious physical injury was inflicted." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003).  In sum, the police officers' actions do not rise to a level, or evince an improper motive, that is shocking to the conscience such that the allegations support a constitutional substantive due process claim.  The Court will therefore grant the police officers' motion to dismiss plaintiff's third claim.

### B.   Plaintiff's Fifth and Sixth Claims - § 1983 Conspiracy

Plaintiff's fifth claim, brought against the state defendants, alleges that they engaged in an conspiracy to "issue[] certificates for Intoxilyzer 9000 devices in

Colorado, including the one at issue in Plaintiff's case, knowing that they had not fulfilled the condition prerequisite to issuing such certificates of establishing scientific standards of performance for such devices, with the intent that said certificates would be used in court in criminal prosecutions to supply a false foundation of the Intoxilyzer 9000's scientific validity and reliability."  Docket No. 58 at 31, ¶ 81.  Plaintiff alleges that this conspiracy violated his Fifth and Sixth Amendment rights because it prevented his "access to the evidence against him prior to trial so that he could properly prepare to raise a defense challenging the validity of that evidence."  *Id*. at 30, ¶ 79.

Plaintiff's sixth claim is related to a response the prosecution filed in plaintiff's criminal case that argued CDPHE could not be compelled to produce the "Intoxilyzer 9000's operator's manual and materials demonstrating that the device had been properly scientifically tested and validated."  Docket No. 58 at 32, ¶ 87.  Plaintiff alleges that "Defendants Groff and CDPHE worked with Defendants CMI, Inc. and Triggs to prevent Plaintiff's access to these plainly discoverable materials with the objective of ensuring Plaintiff be kept unable to raise a defense to Intoxilyzer 9000 test results in the criminal prosecution against him."  *Id*.  Plaintiff alleges those defendants "directed" the filing of the misleading response, which argued that the requested documents could not be produced under copyright law, even though such use would be noninfringing fair use.  *Id*. at 33, ¶¶ 89-90.  In particular, plaintiff notes that the holding of the case relied on in the response, *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D. Pa. 2007), is that the making of otherwise infringing copies for use as evidence in a legal proceeding was "excusable under the doctrine of fair use."  *Id*. at 639.  Again, plaintiff's alleged injury is a violation of his Fifth and Sixth

22

Amendment rights to "have access to the evidence against him prior to trial so that he could properly prepare to raise a defense challenging the validity of that evidence." Docket No. 58 at 32, ¶ 85.

State defendants argue that plaintiff lacks standing to bring his fifth and sixth claims for relief.  First, state defendants argue that plaintiff has no injury under a standing analysis because the state dropped the charge against him before trial and, as a result, he was not convicted of any crimes.  Docket No. 70 at 6; *see also Morgan*, 166 F.3d at 1310 ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.").  Second, state defendants argue that plaintiff cannot show a causal connection between any injury and the challenged conduct because he cannot show how the investigation would have proceeded differently with or without the Intoxilyzer 9000 evidence.  Docket No. 70 at 8-9.

Plaintiff responds that a criminal conviction is not required to prove standing because he has sufficiently alleged injury based on the state defendants' false certification of the Intoxilyzer 9000.  Docket No. 81 at 3.  In particular, he argues his allegations that erroneous test results failed to provide exculpatory evidence and led to the decision to charge him are sufficient to grant standing for his claims.  *Id*. at 4-5. Plaintiff principally relies on *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990), where the Tenth Circuit affirmed a verdict under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment against a detective who provided a false affidavit and withheld evidence after the plaintiff hired an attorney.  The plaintiff, a nanny, was arrested for murdering a child in her care based on the detective's misleading affidavit, but the

23

charges against the nanny were dismissed when the prosecutor became aware of the exculpatory evidence withheld by the detective. *Id*. at 621.

The Court finds that plaintiff's fifth and sixth claims fail to state a claim on which relief can be granted because they allege injury based on deprivation of the right to a fair trial when plaintiff was not convicted. *See Morgan*, 166 F.3d at 1310.[8]  In *Morgan*, the plaintiff was tried and found guilty, but no conviction was entered because the trial court entered a judgment of acquittal based on the investigator's destruction of exculpatory evidence. *Id*. at 1308-09.  The Tenth Circuit followed other circuits in holding that, in "§ 1983 actions brought by individuals alleging violations of constitutional rights arising out of lack of disclosure or preservation of exculpatory evidence in criminal prosecutions" where "all criminal charges were dismissed prior to trial . . . the right to a fair trial is not implicated and, therefore, no cause of action exists under § 1983." *Id*. at 1310 (citations omitted).  Plaintiff's fifth and sixth claims are of this type, and therefore must be dismissed.

While plaintiff's fifth claim alleges falsification of the certificates, plaintiff only alleges that he was injured by being denied access to evidence necessary to prepare his defense.  Docket No. 58 at 32, ¶ 85.  Such a claim, whether based on the withholding of evidence or the destruction of exculpatory evidence, implicates the right to a fair trial.  *See Morgan*, 166 F.3d at 1309 (discussing the rights to a fair trial recognized by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963) and

---

[8] *Morgan* affirmed a grant of summary judgment and did not use a standing analysis, instead holding that "no cause of action exists."  166 F.3d at 1310.  Although the state defendants argue that plaintiff lacks standing, the Court dismisses for failure to state a claim.

*Arizona v. Youngblood*, 488 U.S. 51 (1988)).  Likewise, plaintiff's sixth claim alleges a

conspiracy to prevent disclosure of exculpatory evidence after plaintiff had already been

arrested and charged.  Docket No. 58 at 32-35, ¶¶ 84-95.  Because the charges against

plaintiff were dropped before a conviction was entered, he "cannot be said to have been

deprived of the right to a fair trial."  *Morgan*, 166 F.3d at 1310.

Plaintiff's reliance on *DeLoach* is misplaced.  The nanny in *DeLoach* alleged

injury due to retaliation in violation of her First Amendment right to free association.

922 F.2d at 620.  While the charges against her were ultimately dismissed, the

constitutional injury had already occurred.  *Id.*  It is well established that "wrongful

criminal proceedings cause a judicially cognizable injury" that can confer standing and

allow a plaintiff to seek "nominal damages and retrospective declaratory relief."

*Winsness v. Yocom*, 433 F.3d 727, 734 (10th Cir. 2006).  But plaintiff here does not

allege such an injury, instead alleging that defendants conspired to withhold documents

he needed to prepare his criminal defense.  Docket No. 58 at 30, 32, ¶¶ 79, 85.  To the

extent that plaintiff attempts to amend his complaint through his response brief to allege

defendants' actions caused his prosecution because a "properly certified [device] would

have produced exculpatory evidence" instead of  "falsely inculpatory results," Docket

No. 81 at 4-5, he cannot do so because no such harm is alleged in his complaint.  *See*

*Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6)

motion tests the sufficiency of the allegations within the four corners of the complaint

after taking those allegations as true." (citation omitted)).  Therefore, the Court will

dismiss plaintiff's fifth and sixth claims.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant McClain and Johnson's Motion to Dismiss Amended Complaint [Docket No. 63] is **GRANTED** in part and **DENIED** in part as set forth in this order.  It is further

**ORDERED** that Motion to Dismiss Amended Complaint by Colorado Department of Public Health and Environment – Laboratory Services Division, Jeffrey Groff and David Butcher [Docket No. 70] is **GRANTED**.  It is further

**ORDERED** that CMI, Inc.'s and Alan Triggs' Motion to Dismiss Amended Complaint with Prejudice [Docket No. 61] is **DENIED** as moot.  It is further

**ORDERED** that plaintiff's second, third, fifth, sixth, and seventh claims for relief are dismissed.


DATED March 31, 2017.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge